```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

PORT CARGO SERVICES, LLC,                              CIVIL ACTION
ET AL

VERSUS                                                 NO. 22-1018

WESTCHESTER SURPLUS LINES                              SECTION "B"(1)
INSURANCE COMPANY

## ORDER AND REASONS

Before the Court are defendant Western World Insurance Company's Rule 12(b)(6) motion to dismiss (Rec. Doc. 19) and plaintiffs' opposition (Rec. Doc. 21). For the following reasons,

**IT IS HEREBY ORDERED** that the defendant's Rule 12(b)(6) motion to dismiss is **GRANTED, dismissing the instant action.**

### I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs, Port Cargo Services, LLC ("Port Cargo") and Burnside Plantation LLC d/b/a Houma House ("Burnside Plantation"), own and operate "several commodity warehouses in New Orleans and the historic Houma House Plantation and Gardens in Darrow, Louisiana, which offers restaurants, tours, bed and breakfast, and [are] venue spaces." Rec. Doc. 1-1 at 1. Defendant Western World Insurance Company ("Western World") is an insurance company that sells policies "including property and business interruption insurance policies." Rec. Doc. 1-1 at 4.

On March 1, 2020, defendant Western World issued a commercial property insurance policy (the "policy") to plaintiffs for the period of one year. Rec. Doc. 19-2 at 7 (Western World insurance

policy). The policy is an "all risk policy," that covered plaintiffs' commercial properties, including various warehouses and the Houmas House Plantation. *Id.* at 31.

Plaintiffs' insurance policy covered "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." Rec. Doc. 19-2 at 35. One type of covered loss is "the actual loss of Business Income" from "direct physical loss of or damage to property" that results in a suspension of business operations. *Id.* at 51. Additionally, the policy included coverage for extra expense incurred due to the direct physical loss of or damage to the property. *Id.* Both the loss of business income and the extra expense applied to "the period of restoration," beginning "(1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage." *Id.* at 59. The period of restoration concluded on "(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." *Id.*

Plaintiffs' policy also provided coverage for lost business income and necessary extra expenses resulting from actions of civil authorities. *Id.* at 51. This policy provision applies when both:

> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage . . . and (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 52. Governmental orders prevented plaintiffs from "using its insured properties to conduct its ordinary business activities and deprived Plaintiffs of its properties and the functionality of its properties." Rec. Doc. 1-1 at 4.

However, Western World's policy specifically carved out a coverage exception for loss or damage resulting from any virus. Rec. Doc. 19-2 at 18. The exclusion states that Western World "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *Id.*

In 2020, the COVID-19 global pandemic caused by SARS-CoV-2 resulted in nation-wide restrictions in an attempt to reduce infection rates. See Rec. Doc. 1-1 at 5, 12-14. This included various restrictions by local authorities on places of public gathering, including plaintiff's premises. *See id.* at 12-14. According to plaintiff, "[t]hese orders with similarly construed orders issued by government officials, effectively curtailed Plaintiffs' on-premises operations, resulting in an interruption of business operations and an immediate Business Income and Extra

Expense loss." *Id.* at 13. Plaintiffs' subsequent claims were denied by defendant.

Plaintiffs filed an action for declaratory judgment, breach of contract, and breach of duty of good faith stemming from the denial of insurance claims for business interruption losses and extra expenses due to the COVID-19 pandemic. Rec. Doc. 1-1 at 23-24. After plaintiffs' March 16, 2022 state court filing, defendant Westchester Surplus Lines Insurance Company timely removed the case to federal court. Rec. Doc. 1.

According to the complaint, without specific epidemiological data, plaintiffs allege their properties experienced "the presence, statistically certain presence, or suspected presence" of COVID-19. Rec. Doc. 1-1 at 3. Passed from viral droplets, COVID-19 placed plaintiffs' properties at risk by "remain[ing] active and dangerous in the air in properties and on common surfaces." *Id.* at 7. The presence of such droplets on the plaintiffs' property required "repairing or replacing air filtration systems, remodeling and reconfiguring physical spaces, removal of fomites by certified technicians, and other measures." *Id.* at 11. In addition to extra expenses from decontamination measures, plaintiffs claim to have experienced commercial limitations, with COVID-19 "transforming property from usable and safe into a property that is unsatisfactory for use, uninhabitable, unfit for its intended function, and extremely dangerous and potentially

deadly for humans." *Id.* Plaintiffs further claim that this resulted in "hundreds of thousands of dollars in loss and damage," for which they have not been reimbursed. *Id.* at 2.

On May 12, 2022, defendant Westchester Surplus Lines Company filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See* Rec. Doc. 5. After briefings from defendant Westchester and plaintiffs, on August 19, 2022, the Court granted defendant Westchester's motion to dismiss. *See id.* The Court reasoned that the majority of Louisiana jurisprudence held that "COVID-19 does not present direct physical loss or damage so as to trigger insurance policy provisions for lost business income or necessary extra expense." *See* Rec. Doc. 17 at 10. The Court further found that plaintiffs failed "to make a plausible claim for coverage through civil authority provisions," as they were never prohibited from accessing their properties by any civil authority. *See id.* at 17-18. After failing to establish plausible policy coverage, the Court found that plaintiffs specific remedies for breach of contract, breach of duty of good faith, and declaratory relief, in turn must fail. *See id.* at 18-19. Therefore, the Court granted defendant Westchester's motion to dismiss in its entirety. *See id.*

Defendant Western World Insurance Company then filed the instant motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) on September 23, 2022. *See* Rec. Doc. 19.

Plaintiffs filed their response on October 28, 2022. *See* Rec. Doc. 21.

## II. **LAW AND ANALYSIS**

### A. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint "must contain enough facts to state a claim to relief that is plausible on its face." *Varela v. Gonzalez*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotes omitted)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

However, the court is not bound to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). A complaint may be dismissed when it appears "beyond a doubt that plaintiff can prove no set of facts" that would entitle him to prevail. *Twombly*, 550 U.S. at

560–61; *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 399 (E.D. La. 2016). However, the Fifth Circuit has stated that motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are "viewed with disfavor and [are]...rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

In its evaluation of a 12(b)(6) motion, the court is "cabined to the facts alleged in the complaint." *Jackson v. City of Hearne, Texas*, 959 F.3d 194, 198 (5th Cir. 2020). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *see also Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011) ("[A] court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims."). A document is central to a claim if its attachment "merely assists the plaintiff in establishing the basis of the suit." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). The Fifth Circuit has considered insurance contracts attached to 12(b)(6) motions when central to a claim. *See, e.g., In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205

(5th Cir. 2007); *Little v. USAA Cas. Ins. Co.*, No. 09-30948, 2010 WL 4909869, at *2 (5th Cir. Apr. 2, 2010).

In this case, the Court may consider the insurance policy attached to defendant's motion to dismiss. Rec. Doc. 19-2. Plaintiffs reference the subject insurance policy throughout their complaint. *See generally* Rec. Doc. 1-1. In their introduction of the claim, plaintiffs centered their argument on the contents of the policy: "Defendant promised to pay for, in exchange for premiums paid, physical loss of or damage to and related business interruption losses and expenses under an 'all risk' insurance policy." *Id.* at 1 ¶ 1. The insurance policy is both referenced by the plaintiffs' petition and central to their claim therefore the insurance policy will be considered a part of the pleadings for the purposes of analyzing defendant's motion to dismiss.

**B. Louisiana Substantive Law**

The Fifth Circuit has interpreted the United States Supreme Court's decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), to "require[] that federal courts apply substantive state law when adjudicating diversity-jurisdiction claims, but in doing so apply federal procedural law to the proceedings." *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991) (citing *Hanna v. Plumer*, 380 U.S. 460 (1965)). Here, jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. *See* Rec. Doc. 1-1 at 1. As such, the Court must apply substantive state law. *See*

*Cates*, 928 F. 2d at 687. This Court has previously held, and parties seemingly concede that Louisiana substantive law applies to the instant matter. *See* Rec. Doc. 17 at 7; Rec. Doc. 19-1 at 5; Rec. Doc. 21 at 9. In determining Louisiana law, federal courts sitting in diversity first "look to the final decisions of the Louisiana Supreme Court." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 206.

Under Louisiana law, an insurance policy is "construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003). "The words of a contract must be given their generally prevailing meaning." La. Civ. Code art. 2047. Contractual words, however, may "have acquired a technical meaning." *Cadwallader*, 848 So. 2d at 580. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. More specifically, words within an insurance policy "are not read in isolation," but as part of the greater document. *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009).

When policy provisions are ambiguous, they "are generally construed against the insurer and in favor of coverage." *Cadwallader*, 848 So. 2d at 580. Even so, ambiguous insurance provisions must be "susceptible to two or more reasonable

interpretations." *Carrier v. Reliance Ins. Co.*, 759 So. 2d 37, 43(La. 2000). Generally, the interpretation of insurance contract provisions involves a question of law. *Bonin v. Westport Ins. Corp.*, 930 So. 2d 906, 910 (La. 2006). "The burden rests with the insured to prove that an insurance policy covers a particular claim." *IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 346 (5th Cir. 2020) (applying Louisiana law).

Here, plaintiffs argue that Western World's insurance policy is near identical to the policy addressed and analyzed in the Louisiana Court of Appeal, Fourth Circuit's decision in *Cajun Conti*. *See* Rec. Doc. 21 at 2, 11, 12 (citing *Cajun Conti LLC v. Certain Underwriters at Lloyd's, London*, No. 2021-CA-0343, 2022 WL 2154863, at *1 (La. App. 4 Cir. June 15, 2022) (hereinafter "*Cajun Conti I*"). As such, in plaintiffs' opposition, they requested that this Court "defer ruling on Western World's motion pending action by the Louisiana Supreme Court on the pending writ application in *Cajun Conti* . . . ." *See id.* at 1. The Louisiana Supreme Court granted certiorari, and on March 17, 2023, published its opinion reversing the court of appeal and reinstating the trial court judgment. *See Cajun Conti LLC v. Certain Underwriters at Lloyd's, London*, No. 2022-C-01349, 2023 WL 2549132, at *5 (La. Mar. 17, 2023) (hereinafter "*Cajun Conti II*"). We agree with plaintiffs' contentions that the facts in *Cajun Conti* are near identical to the instant matter. Having received a final judgment from the

Supreme Court of Louisiana, this Court will apply the *Cajun Conti II* decision to the case at hand.

In *Cajun Conti*, due to the COVID-19 pandemic, a New Orleans, Louisiana restaurant "closed [its] dining rooms on March 16, 2020, in compliance with the mayor's proclamation, and reopened on May 16, 2020, in keeping with updated mayoral guidelines." *Cajun Conti I*, 2022 WL 2154863, at *1. Also on March 16, plaintiff "petition[ed] for declaratory judgment seeking a declaration from the district court that a policy issued to it by [its insurer] covered certain losses related to the pandemic." *Id.* Plaintiff had an all-risk policy that provided:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at [the] premises….
> "Operations" are defined as:
> 2. Your business activities occurring at the described premises…
> "Period of restoration" means the period of time that:
> a. Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and
> b. Ends on the earlier of:
> (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
> (2) The date when business is resumed at a new permanent location.
> "Suspension" means:
> a. The slowdown or cessation of your business activities…

*Cajun Conti II*, 2023 WL 2549132, at *5. Based on this policy, the Louisiana State Supreme Court held that "to recover lost business

income, the insured must experience a suspension of operations 'caused by direct physical loss of or damage to property.'" *Id.* Because "direct physical loss of or damage to property," was not defined in the policy and had not obtained a technical meaning, the court proceeded to interpret the language using the general rules of contract interpretation set forth in the Civil Code. *See id.* at *3. The Court found that the "ordinary and generally prevailing meaning of 'direct physical loss of or damage to property' requires the insured's property sustain a physical, meaning tangible or corporeal, loss or damage," ultimately holding that "COVID-19 did not cause direct physical loss of or damage to [the insured's] property." *Id.*

The court reasoned that the fact that surfaces could be cleaned with disinfectant supported defendant's contention that plaintiff's surfaces were not damaged within the meaning of the policy. *See id.* The court further found that plaintiff's argument that the fact that "government restrictions on dining capacity and public health guidance regarding social distancing reduced [plaintiff's] in-person dining capacity and restricted its use," did not result in any physical loss "in any tangible or corporeal sense." This was in part because plaintiff's "kitchen continued to provide take-out and delivery service, and the restaurant's physical structure was neither lost nor damaged." *Id.* The Court

was clear that the inquiry is on whether a direct *physical* loss occurred, not whether there was a loss of use. *See id.*

The *Cajun Conti II* case similarly found that "period of restoration" was necessarily predicated on finding a "direct physical loss of or damage to property," which plaintiff could not show. *See id.* Additionally, the court reasoned that while the policy stated that "[t]he restoration period ends when the property should be 'repaired, rebuilt or replaced with reasonable speed and similar quality' or 'business is resumed at a new permanent location,'" the ordinary and prevailing meaning of the words necessarily suggested "fixing a physical defect." *See id.* at *3-4. Plaintiff could not establish that it maintained any loss or damage physical in nature. *See id.* at *4. Importantly, the Court also noted that "to date no state supreme court that has addressed this issue has finally decided the presence of COVID-19 constitutes a physical loss of or damage to property." *Id.* at *5.

Here, plaintiffs explicitly concede that "*Cajun Conti* . . . featured an all-risk business policy very similar to the one at issue here," specifically arguing that "the Western World policy at issue contains the exact same policy language with respect to 'Business Income' and 'Suspension,' and functionally similar language as to 'Period of Restoration.'" *See* Rec. Doc. 21 at 11-12; *see also* Rec. Doc. 21 at 2 (emphasis added) (arguing that *Cajun Conti I* should apply because it "held that policy language

*identical* to the language in Western World's policy is ambiguous and thus must be construed in the insured's favor . . . ."). After reviewing the subject policy provisions, we agree with plaintiffs that the policy language is near identical to that of *Cajun Conti*. *See generally* Rec. Doc. 19-2 at 35-59.

Plaintiffs' claims are predicated on the Court finding that plaintiffs sustained loss as a result of "direct physical loss of or damage to property." While plaintiffs rely on the Court of Appeal for the Fourth Circuit of Louisiana in *Cajun Conti I*, the Supreme Court of Louisiana spoke directly on the issue in *Cajun Conti II*, reversing *Cajun Conti I*.

Similar to *Cajun Conti I*, plaintiffs allege that Western World's policy is ambiguous and should be construed in favor of coverage. *See* Rec. Doc. 21 at 11-14. However, addressing "an all-risk policy very similar to the one at issue here," the Supreme Court of Louisiana found the policy was not ambiguous and the "'direct physical loss of or damage to property' requires the insured's property sustain a physical, meaning tangible or corporeal, loss or damage. The loss or damage must also be direct, not indirect." *See Cajun Conti II*, 2023 WL 2549132, at *3. Following the direction of the Supreme Court of Louisiana, this Court reject's plaintiffs' argument that the policy is ambiguous.

Whereas plaintiffs argue that contamination by the COVID-19 virus resulted in physical alterations resulting in direct

physical damage to their properties, and "the presence of COVID-19 on their premises caused a slowdown or suspension of their business . . . . and that such presence was a physical loss that resulted in a loss of business income," these alleged damages are neither tangible nor corporeal. *See* Rec. Doc. 21 at 17. For the same reasons set forth by the Supreme Court of Louisiana in *Cajun Conti II*, this Court finds that presence of the COVID-19 virus does not constitute "direct physical loss of or damage to property." *See Cajun Conti II*, 2023 WL 2549132, at *3-5.

Plaintiffs then argue that the Court should apply the reasoning of *Widder v. Louisiana Citizens Prop. Ins. Corp., 11-0196 (La. App. 4 Cir. 8/10/11), 82 So.3d 294, 296* (case involving the presence of lead) and *In re Chinese Manufactured Drywall*, 759 F. Supp. 2d 822, 831 (E.D. La. 2010) (case involving contaminated drywall which needed to be removed and replaced). *See* Rec. Doc. 21 at 15-17. The Supreme Court directly addressed these cases in *Cajun Conti II*, and found them unpersuasive. *See Cajun Conti II*, 2023 WL 2549132, at *4. This Court similarly is not persuaded by *Widder* and *In re Chinese Manufactured Drywall*.

None of these arguments were persuasive to the Supreme Court of Louisiana and similarly these arguments are unpersuasive to this Court. Moreover, the state's highest court has made a ruling on state substantive law that is applicable in this diversity-based action. As such, plaintiffs' petition fails to make a

plausible claim for coverage through COVID-19 as cause of direct physical loss of or damage to property.

Similarly, plaintiffs' petition fails to make a plausible claim for coverage through civil authority provisions. Whereas *Cajun Conti II* did not directly address the issue,[1] the same reasoning nonetheless applies. Plaintiff admits that civil authority coverage "must arise from direct physical loss or damage to property other than at such location," which, as this Court previously mentioned, plaintiffs cannot establish. *See* Rec. Doc. 21 at 20-21.

Finding no direct physical loss of or damage to property, and therefore finding that defendant's all-risk policy did not provide coverage, plaintiffs cannot establish their specific remedies of breach of contract by defendant arising from its all-risk policy, breached of duty of good faith and fair dealing, or declaratory relief. As coverage under defendant's all-risk policy was never triggered, there cannot be a plausible claim for breach of contract. Since "[b]reach of contract is a condition precedent to recovery for the breach of the duty of good faith," and there was no breach of contract, plaintiffs too are unable to establish breach of duty of good faith and fair dealing. *See Bayle v.*

---

[1] Plaintiff in *Cajun Conti* originally sought declaration that the civil authority provision of the policy provided coverage, the "civil authority claim was voluntarily dismissed at the beginning of trial, with [plaintiff] choosing to focus solely on the theory of physical loss or damage from COVID-19 contamination." See *Cajun Conti II*, 2023 WL 2549132, at *1 n.1.

*Allstate Ins. Co.*, 615 F.3d 350, 363 (5th Cir. 2010) (applying Louisiana law). Finally, plaintiffs' request for declaratory relief must fail as all relief sought either references or relies on plaintiffs' theory that COVID-19 caused a direct physical loss of or damage to the insured property, or it makes general policy restatements. *See* Rec. Doc. 1-1 at 22-23. As such, plaintiffs cannot demonstrate that their claims are plausible on the face of the complaint. Therefore, all claims for relief must be **DISMISSED**.[2]

New Orleans, Louisiana this 1st day of May, 2023

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] Because plaintiffs do not demonstrate that their claims are plausible on the face of the complaint, the Court need not address whether the virus exclusion in defendant's policy also precludes coverage on all claims.